IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ERIE DIVISION

|  |  |
|---|---|
| KAREEM BLOUNT, | ) 1:21-CV-00291-RAL |
| Plaintiff | ) RICHARD A. LANZILLO |
| vs. | ) Chief United States Magistrate Judge |
| P.A. LESLIE, et al., | ) Memorandum Opinion on Defendant's Motion for Summary Judgment and Plaintiff's Motion to Amend |
| Defendants | ) ECF Nos. 54 and 65 |

I.  Introduction

Plaintiff Kareem Blount, an inmate formerly confined at the State Correctional Institution at Forest[1] (SCI-Forest), initiated this pro se civil rights action seeking monetary relief pursuant to 42 U.S.C. § 1983. In his Complaint, Blount asserts that Defendant Leslie, a licensed Physician's Assistant, violated the Eighth Amendment by making the medical decision to discontinue his asthma inhalers on October 17, 2019.[2] ECF No. 26. ¶ 1. Following the close of discovery, Defendant filed a motion for summary judgment accompanied by a brief in support, concise statement of material facts, and an appendix of exhibits. ECF Nos. 54-56. Blount responded by filing a brief in opposition, statement of disputed facts, and a declaration. ECF No. 58-60. As such, Defendant's motion is ripe for adjudication.[3]

---

[1] Blount has since been transferred to SCI-Greene.

[2] The claims against another Defendant, Kim Smith, was dismissed from this action on August 5, 2022. *See* ECF No. 38.

[3] The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge to conduct all proceedings in this case, including the entry of final judgment, as authorized by 28 U.S.C. § 636.

1

II.     Material Facts

The following facts are derived from the statements of fact and supporting exhibits submitted by the parties. On January 30, 2019, while incarcerated at SCI-Benner Township, Blount visited a physician's assistant (PA) with complaints that the prison's recirculated air made it difficult to breathe. ECF No. 54-2 ¶¶ 2, 13. The PA started him on the medication Singulair and renewed his prescription for DueNeb, a bronchodilator. *Id.* ¶ 2.

On March 29, 2019, another PA noted that Blount had refused to attend an asthma chronic care clinic. *Id.* ¶ 3. After reviewing his records, the PA renewed Blount's asthma inhalers but noted that there was no medical indication to continue DuoNeb. *Id.* He observed that Blount's last lung evaluation revealed clear lungs without wheezing. *Id.*

Blount visited with a nurse practitioner (NP) on March 29 and April 1, 2019, to renew his breathing treatments. *Id.* ¶ 5. It was noted that his breathing treatments were renewed at that time. *Id.*

On April 29, 2019, another PA met with Blount for asthma chronic care clinic. *Id.* ¶ 6. The PA noted that Blount's asthma was seasonal and triggered by dust. *Id.* His pulse oxygen was 98% on normal air and his asthma was documented as well controlled with no recent attacks and less than one inhaler used in the previous month. *Id.*

On July 18, 2019, a nurse assessed Blount for complaints of shortness of breath and chest pain related to not taking his breathing treatments. *Id.* ¶ 11. On examination, Blount's temperature was 98 degrees, respiratory rate was 16, pulse rate was 60, blood pressure was 132/76, and pulse oxygen level was 98%. *Id.* An EKG was normal. *Id.* The nurse scheduled Blount for a visit with a PA the following day. *Id.*

On July 19, 2019, a PA visited Blount at sick call for his complaints of shortness of breath and chest discomfort. *Id.* ¶ 12. The PA assessed him with asthma and indicated that no change in therapy was needed at that time. *Id.*

On October 9, 2019, Blount was transferred from SCI-Benner Township to SCI-Forest. *Id.* ¶ 13. At the time of his transfer, one of his "chronic medical problems" was listed as "[m]oderate persistent asthma." ECF No. 54-2 at 196. He was placed in a dry cell and closely monitored upon arrival because security officials believed he may have ingested drugs. ECF No. 55 ¶ 13. Upon intake, Leslie and a prison physician, Dr. Maxa, each reviewed Blount's medical chart, medications, chronic clinics, diet, and consults. *Id.* ¶ 14. Based on that review, Leslie discontinued Blount's asthma medications and removed him from the asthma chronic clinic after noting that he had not picked up his medications since June. ECF No. 54-3 at 7.

On October 17, 2019, Blount visited Leslie at sick call to discuss the discontinuation of his asthma medications. *Id.* ¶ 17. Leslie advised him that his inhalers had been discontinued at the last chronic clinic because Blount had not picked them up since June and because they were no longer deemed medically necessary. *Id.* Blount explained that his medication was typically brought directly to his cell (since he was housed in solitary confinement) and that he only used his inhaler on an "as needed basis" and, therefore, did not need to pick it up every month. ECF No. 60 ¶ 6. Leslie refused to renew his prescriptions, instructing him to return to sick call as needed for his asthma. ECF No. 54-2 ¶ 17.

Later that day, a correctional officer used pepper spray to subdue an inmate on Blount's unit. ECF No. 59 at 2. Blount alleges that he experienced "an asthma attack in which [his] lungs and throat closed up" after being exposed to the second-hand effects of that spray. ECF No. 60 ¶

3

9. Blount also experienced labored breathing, chest constriction, coughing and dizziness. *Id.* ¶ 10. He maintains that his symptoms could have been relieved with his rescue inhaler. *Id.*

Blount's next asthma-related contact with the medical staff occurred on November 5, 2019, when a nurse examined him for complaints of shortness of breath. ECF No. 54-2 ¶ 20. Blount's vitals displayed a pulse of 79, respiration rate of 16, blood pressure of 112/74, and oxygen level of 99. *Id.* He was in no acute distress, his lungs were clear, and his respirations were normal. *Id.* The nurse encouraged him to rest and follow up with a sick call later that day. *Id.*

NP Sutherland examined Blount later that day at sick call and noted that Blount's lungs were clear and his heart rate normal. *Id.* ¶ 21. He displayed no evidence of shortness of breath or wheezing and had good oxygen saturation. *Id.* Sutherland indicated that there was no need to reinstate Blount's inhalers. *Id.* Blount began to yell, prompting Sutherland to terminate the visit. *Id.*

Approximately one month later, Leslie visited Blount at his cell for complaints of asthma attacks. *Id.* ¶ 22. Leslie noted that Blount was "standing at [his] cell door, yelling and argumentative." *Id.* Leslie advised Blount that there was no "indication for inhalers" and that multiple medical providers had evaluated him for the same issue. *Id.* Blount terminated the visit, telling Leslie that he "would be seeing [him] in court." *Id.*

At some point thereafter, Blount was transferred from SCI-Forest to SCI-Mahanoy. ECF No. 60 ¶ 13. Upon arrival, Blount's asthma medications were renewed. *Id.* Blount avers that the only time in his twenty years of incarceration that he did not have access to asthma medication was during his time at SCI-Forest. *Id.*

4

III.     Standard of Review

Federal Rule of Civil Procedure 56(a) requires the court to enter summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Under this standard "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law. *Anderson*, 477 U.S. at 248; *Gray v. York Newspapers, Inc.*, 957 F.2d 1070, 1078 (3d Cir. 1992). An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 257; *Brenner v. Local 514, United Bhd. of Carpenters and Joiners of Am.*, 927 F.2d 1283, 1287-88 (3d Cir. 1991).

When determining whether a genuine issue of material fact remains for trial, the court must view the record and all reasonable inferences to be drawn therefrom in favor of the nonmoving party. *Moore v. Tartler*, 986 F.2d 682 (3d Cir. 1993); *Clement v. Consol. Rail Corp.*, 963 F.2d 599, 600 (3d Cir. 1992); *White v. Westinghouse Electric Co.*, 862 F.2d 56, 59 (3d Cir. 1988). To avoid summary judgment, however, the nonmoving party may not rest on the unsubstantiated allegations of his or her pleadings. Instead, once the movant satisfies its burden of identifying evidence that demonstrates the absence of a genuine issue of material fact, the nonmoving party must go beyond his pleadings with affidavits, depositions, answers to interrogatories or other record evidence to demonstrate specific material facts that give rise to a genuine issue. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

Further, under Rule 56, a defendant may seek summary judgment by pointing to the absence of a genuine fact issue on one or more essential claim elements. The Rule mandates summary judgment if the plaintiff then fails to make a sufficient showing on each of those elements. When Rule 56 shifts the burden of production to the nonmoving party, "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323. *See Harter v. G.A.F. Corp.*, 967 F.2d 846, 851 (3d Cir. 1992).

IV. Analysis

Blount's lone claim is that Leslie violated the Eighth Amendment's prohibition against cruel and unusual punishment by displaying deliberate indifference to his serious medical needs. *See Estelle v. Gamble*, 429 U.S. 97 (1976) (stating that "deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment") (internal quotation omitted). Specifically, Blount maintains that Leslie violated the constitution by discontinuing his prescription for asthma inhalers and removing him from the asthma clinic.

To establish a violation of his constitutional right to adequate medical care, a plaintiff is required to allege facts that demonstrate: (1) a serious medical need, and (2) acts or omissions by prison officials that indicate deliberate indifference to that need. *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). Such indifference is manifested by an intentional refusal to provide care, delayed medical treatment for non-medical reasons, denial of prescribed medical treatment, a denial of reasonable requests for treatment that results in suffering or risk of injury, *Durmer v. O'Carroll*, 991 F.2d 64, 68 (3d Cir. 1993), or "persistent conduct in the face of resultant pain and risk of permanent injury." *White v. Napoleon*, 897 F.2d 103, 109 (3d Cir. 1990).

It is well-settled that "an inmate's dissatisfaction with a course of medical treatment, standing alone, does not give rise to a viable Eighth Amendment claim." *Tillery v. Noel*, 2018 WL 3521212, at *5 (M.D. Pa. June 28, 2018) (collecting cases). Such complaints fail as constitutional claims because "the exercise by a doctor of his professional judgment is never deliberate indifference." *Gindraw v. Dendler*, 967 F. Supp. 833, 836 (E.D. Pa. 1997) (citing *Brown v. Borough of Chambersburg*, 903 F.2d 274, 278 (3d Cir. 1990) ("[A]s long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights.")). "Therefore, where a dispute in essence entails nothing more than a disagreement between an inmate and doctors over alternate treatment plans, the inmate's complaint will fail as a constitutional claim under § 1983." *Tillery*, 2018 WL 3521212, at *5 (citing *Gause v. Diguglielmo*, 339 Fed. Appx. 132 (3d Cir. 2009) (characterizing a dispute over pain medication as the type of "disagreement over the exact contours of [plaintiff's] medical treatment" that does not violate the constitution)).

Similarly, "the mere misdiagnosis of a condition or medical need, or negligent treatment provided for a condition, is not actionable as an Eighth Amendment claim because medical malpractice standing alone is not a constitutional violation." *Tillery*, 2018 WL 3521212, at *5 (quoting *Estelle*, 429 U.S. at 106). "Indeed, prison authorities are accorded considerable latitude in the diagnosis and treatment of prisoners." *Durmer*, 991 F.2d at 67 (citations omitted). Thus, "courts have consistently rejected Eighth Amendment claims where an inmate has received some level of medical care." *Hensley v. Collins*, 2018 WL 4233021, at *3 (W.D. Pa. Aug. 15, 2018) (quoting *Clark v. Doe*, 2000 WL 1522855, at *2 (E.D. Pa. Oct. 13, 2000)). *See also Wisniewski v. Frommer*, 751 Fed. Appx. 192 (3d Cir. Oct. 3, 2018) (noting that "there is a critical distinction 'between cases where the complaint alleges a complete denial of medical care and those alleging

inadequate medical treatment.'") (quoting *Pearson v. Prison Health Serv.*, 850 F.3d 526, 535 (3d Cir. 2017)).

In the instant case, there is no question that Leslie and the medical staff at SCI-Forest provided Blount with "some level of medical care." *Hensley*, 2018 WL 4233021, at *3. Blount's medical records indicate that he was examined by medical personnel on at least three occasions for complaints of asthma-related symptoms. On each occasion, medical personnel, including Leslie, observed that Blount's lungs were clear, his breathing was normal, and his oxygen levels were good. Based on these factors, Leslie determined that Blount's asthma medications were no longer medically indicated. "Where the plaintiff has received some care, inadequacy or impropriety of the care that was given will not support an Eighth Amendment claim." *Norris v. Frame*, 585 F.2d 1183, 1186 (3d Cir. 1978).

To the extent that Blount complains that Leslie's decision to discontinue his asthma inhaler was incorrect, it is well-settled that an inmate's objection to the type of medication provided by prison physicians is precisely the type of "disagreement between an inmate and doctors over alternate treatment plans" that falls well short of a constitutional violation. *Tillery*, 2018 WL 3521212, at *5. Indeed, these types of claims frequently arise – and are routinely rejected – in the prison setting. *See, e.g.*, *Whooten v. Bussanich*, 248 Fed. Appx. 324, 326-27 (3d Cir. 2007) (medical staff was not deliberately indifferent for treating migraine headaches with a medication other than the drug preferred by plaintiff); *Ascenzi v. Diaz*, 247 Fed. Appx. 390, 391 (3d Cir. 2007) (no deliberate indifference where plaintiff was provided pain medication and antibiotics instead of narcotic pain relievers for his herniated cervical discs). While Blount was clearly frustrated by the removal of his medications, the record makes clear that Leslie terminated those medications based on his clinical assessment that they were no longer medically

8

indicated. Right or wrong, that decision, based on "the exercise by a doctor of his professional judgment," did not violate the constitution. *Gindraw v. Dendler*, 967 F. Supp. at 836. The record includes evidence that other medical providers may have arrived at a different medication judgment at other times during Blount's incarceration, but such is "evidence only of a disagreement between medical professionals, and mere disagreements of professional opinion do not amount to deliberate indifference." *Soto-Muniz v. Martin*, 665 Fed. Appx. 226, 229 (3d Cir. 2016). *See also Gonzalez v. Nash*, 2005 WL 2335125, at *10 (M.D. Pa. Sept. 22, 2005) (holding that failure to provide inmate "with physical therapy due to a disagreement between physicians is a question of negligent medical care and does not set forth a viable claim of deliberate indifference under the standards announced in *Estelle*").

V.   Conclusion

For the reasons stated herein, Defendant Leslie's motion for summary judgment is granted and Blount's motion to amend[4] is denied. A separate judgment will follow.

DATED this 25th day of September, 2023.

BY THE COURT:

RICHARD A. LANZILLO
CHIEF UNITED STATES MAGISTRATE JUDGE

---

[4] After briefing on Leslie's motion for summary judgment was complete, Blount filed a motion seeking leave to amend his complaint for a second time. However, his proposed amended complaint [ECF No. 65] is substantively identical to the presently operative pleading in all material respects. Accordingly, his request to amend is denied as futile.